J-S23019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE L. VELAZQUEZ, JR. | : | |
| | : | |
| Appellant | : | No. 2626 EDA 2025 |

Appeal from the PCRA Order Entered September 11, 2025
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000339-2019

BEFORE:   LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                          **FILED AUGUST 3, 2026**

Jose L. Velazquez, Jr. (Appellant), appeals from the order dismissing his second petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

On January 14, 2019, Appellant "br[oke] into the home of Tony Chillemi, the husband of Appellant's girlfriend, and threaten[ed] him with a gun." ***Commonwealth v. Velazquez***, 307 A.3d 87, 89 (Pa. Super. 2023).  The Commonwealth subsequently charged Appellant with one count each of burglary, persons not to possess firearms, carrying a firearm without a license, criminal trespass, terroristic threats, and simple assault; and two counts of

_____

[*] Retired Senior Judge assigned to the Superior Court.

possessing instruments of crime.[1]  "On March 16, 2022, after a three-day trial, the jury found Appellant guilty [of burglary] and acquitted him of all other offenses." *Id.*

As this Court previously explained,

[f]ollowing [the announcement of] the verdict and the dismissal and dispersal of the jury, Appellant requested that the [trial] court poll the jury.  The trial court called the jurors back into the courtroom, polled them, determined that their verdict was not unanimous, and ordered a mistrial.  Several weeks later, the court reversed its order on the ground that Appellant's right to poll the jury expired upon dispersal of the jury.

*Id.*

On May 24, 2022, the trial court imposed a sentence of 10 to 20 years' imprisonment.[2]  Appellant filed a timely post-sentence motion, which the trial court denied.  At that point, Appellant's trial counsel withdrew from representation and new private counsel, Michael A. Ventrella, Esquire (Attorney Ventrella), entered his appearance.

Appellant timely appealed to this Court.  We held "that the [trial] court properly reversed its order granting a mistrial," *id.*, reasoning as follows:

[T]he record establishes that defense counsel failed to request polling until after the court discharged the jury and most of the jurors left the courtroom.  Multiple jurors were in the course of

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 6105(a)(1), 6106(a)(1), 3503(a)(1)(i), 2706(a)(1), 2701(a)(3), 907(a), (b).

[2] Due to a previous conviction for aggravated assault, Appellant was a "second strike offender" under 42 Pa.C.S.A. § 9714(a)(1), and the trial court imposed "the mandatory minimum [sentence] for a second-strike offender…." *Velazquez*, 307 A.3d at 91.

- 2 -

leaving the courthouse. One juror was waiting at the door of the courthouse for an escort to her car. Under [*Commonwealth v.*] *Downey*, [732 A.2d 593 (Pa. 1999),] defense counsel lost the right to request polling because the jury had already dispersed. As a result, the court's decisions to call the jury back into the courtroom, poll the jury, and declare a mistrial were nullities.

*Id.* at 92. We affirmed Appellant's judgment of sentence on November 29, 2023.

On March 1, 2024, still represented by Attorney Ventrella, Appellant timely filed his first PCRA petition. The petition asserted that trial counsel rendered ineffective assistance by failing to request that the jury be polled prior to its dispersal. *See generally* PCRA Petition, 3/1/24.

On June 11, 2024, the PCRA court held an evidentiary hearing, at which Appellant testified as the only witness. On December 30, 2024, the PCRA court filed an opinion and order dismissing Appellant's petition. The PCRA court opined that an attorney's "failure to request jury polling, without more, does not constitute ineffective assistance of counsel." PCRA Court Opinion, 12/30/24, at 7 (citing, *inter alia*, *Commonwealth v. Williams*, 640 A.2d 1251, 1266 (Pa. 1994) (stating that an attorney's failure to request jury polling "does not constitute ineffective assistance counsel in the absence of other factors")). Reviewing the trial record, the PCRA court found that nothing

- 3 -

that occurred prior to the jury's dispersal would have given trial counsel reason to request jury polling. *See id.* at 8-10.[3]

_____

[3] The same judge presided over Appellant's trial and all subsequent PCRA proceedings. The PCRA court found as follows:

> Trial was uneventful and lasted only three days. The Commonwealth's case was presented in two days. On the third day, the defense submitted three exhibits and rested. The jury returned its verdict that same day. The jury did not deliberate for an extended period and, while the verdict was rendered in the evening, deliberations did not go late into the night. Like the evidentiary portion of trial, deliberations were uneventful. The jury asked only a single question[,] which [the trial court] answered with input from[,] and to the satisfaction of[,] counsel for both parties. ([N.T., 3/16/22,] at 127-37). The jury did not, at any time, indicate that it was deadlocked or otherwise having trouble reaching a verdict. No problems were reported by the jurors or tipstaves. Additionally, before returning to the courtroom[,] all 12 jurors signed the verdict slip. The verdict announced in open court mirrored the verdict that was delineated on the slip. Similarly, when the verdict was announced, no juror expressed or manifested disagreement with the foreperson's announcements. Significantly, after the verdict was announced, the Clerk [of Courts] asked, "Ladies and gentlemen of the jury, harken unto the verdict as the Court has recorded it in the issue between the Commonwealth of Pennsylvania and [Appellant], so say you all and are you content?" All jurors answered "Yes." (*Id.* at 140). Further, there was ample evidence to support the burglary conviction. Finally, [Appellant] did not present evidence of, and [the court] did not observe any indication of, juror fatigue, coercion, domination, or any other factor that would[,] at the time the verdict was announced[,] have objectively called for [trial counsel] to ask that the jury be polled. Under these circumstances …, [the PCRA court] find[s] that [Appellant] failed to demonstrate that his ineffectiveness claim has arguable merit or that he suffered prejudice because [trial counsel] did not [timely] request polling.

PCRA Court Opinion, 12/30/24, at 8-9 (footnote omitted).

The PCRA court further determined that the untimely, post-dispersal jury polling established "that the jury was unanimous as to the burglary conviction, but not [unanimous] with respect to the charges for which [Appellant] was found not guilty." *Id.* at 12; *see also id.* at 12-13 (PCRA court stating that, at the PCRA evidentiary hearing, Attorney Ventrella agreed with the court's statement that the jury was "clearly unanimous" as to the burglary charge (quoting N.T., 6/11/24, at 24-25)).[4]    The PCRA court

_____

[4] The PCRA court explained that

> [a]t the time the mistrial was declared, two of 12 jurors had been polled and one or two other jurors had interjected comments or questions during the polling process. While it became clear that at least some of the non-burglary acquittals were not unanimous, neither the jurors who were questioned nor the interjectors expressed disagreement with[,] or called into question[, the] unanimity of the burglary conviction as announced in open court and assented to by all jurors.

PCRA Court Opinion, 12/30/24, at 13 (footnote omitted). During polling, Juror No. 2 stated that she considered Appellant to be guilty of criminal trespass and terroristic threats—two charges for which the jury had returned not guilty verdicts. *See* N.T., 3/16/22, at 149-52. After the trial court clarified its instructions regarding unanimous verdicts, an unidentified juror stated there had been a misunderstanding by the jury, and seemed to suggest the jury had believed that if "it wasn't unanimous that the person was guilty" of a charge, then the jury should return a not guilty verdict on that charge. *Id.* at 151-52. Thereafter, in a sidebar, trial counsel moved for a mistrial, arguing that the jury was now tainted because the jury had heard—after the announcement of the verdict but before the jury was initially dispersed—the Commonwealth refer to Appellant's unrelated criminal conduct in connection with a motion to revoke Appellant's bail. *Id.* at 154; *see also id.* at 140-41 (Commonwealth's motion to revoke Appellant's bail). The Commonwealth suggested the jury could continue deliberating after the trial court gave a cautionary instruction for the jury to disregard the references to Appellant's unrelated criminal conduct. *Id.* at 154-55. The trial court granted Appellant's mistrial motion. *Id.* at 161-62.

concluded that because "the burglary conviction was unanimous and the acquittals—whether unanimous or not—inured to his benefit, [Appellant] was not prejudiced by [trial counsel's] failure to [timely] request polling." *Id.* at 13 (some punctuation modified).

Pertinently, Appellant did not file a notice of appeal from the PCRA court's December 30, 2024, order dismissing his first PCRA petition.

On June 24, 2025, Appellant filed a *pro se* PCRA petition, his second. Therein, Appellant claimed that Attorney Ventrella rendered ineffective assistance by failing to file a requested appeal from the dismissal of Appellant's first PCRA petition.[5] The PCRA court appointed new counsel to

---

[5] A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and proves" one of three enumerated exceptions. 42 Pa.C.S.A. § 9545(b)(1); *see also id.* § 9545(b)(3) ("a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review"). Ordinarily, the ineffectiveness of PCRA counsel does not itself satisfy a timeliness exception; however, a

> narrow exception to the rule that ineffectiveness of PCRA counsel cannot satisfy a timeliness exception exists where there is a failure of counsel to timely file a PCRA petition or comply with deadlines in a PCRA appeal that wholly deprives the defendant of any PCRA review or of any appellate review of denial of a PCRA petition. *Commonwealth v. Peterson*, 192 A.3d 1123, 1129-32 (Pa. 2018); *Commonwealth v. Bennett*, 930 A.2d 1264, 1272-74 (Pa. 2007); [*Commonwealth v.*] *Hipps*, 274 A.3d [1263,] 1268-72 [(Pa. Super. 2022)].

*Commonwealth v. Barber*, 303 A.3d 744 (Pa. Super. 2023) (unpublished memorandum at 7 n.2); *see also* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value).

represent Appellant. Counsel did not file an amended or supplemental petition.

On September 11, 2025, the PCRA court held an evidentiary hearing, at which Appellant, Attorney Ventrella, and Attorney Ventrella's office manager and legal assistant, Shadha Cox (Ms. Cox), testified.

Appellant testified that, on January 7 or 8, 2025, he received a letter from Attorney Ventrella, dated January 2, 2025. N.T., 9/11/25, at 9-11; *see also id.*, Appellant's Exhibit 3 (Letter, 1/2/25). In the letter, Attorney Ventrella advised Appellant of the PCRA court's December 30, 2024, dismissal of his first PCRA petition. Letter, 1/2/25, at 1. After briefly explaining the PCRA court's reasoning, Attorney Ventrella stated that while he disagreed with the decision, it was not unexpected. *Id.* Attorney Ventrella advised that Appellant could appeal the decision, but opined that, in light of certain appellate caselaw, Appellant's likelihood of prevailing on appeal "may be slim." *Id.* at 2. Attorney Ventrella advised that "[a]n appeal will need to be filed within 30 days[,] so you need to decide quickly." *Id.* He further stated that "an appeal … is costly," and requested a "reduced fee" of $5,000 to handle the appeal. Attorney Ventrella asked Appellant to "get back in touch with me as soon as you can." *Id.*

Appellant testified that, after receiving the letter, he unsuccessfully attempted to call Attorney Ventrella's office. N.T., 9/11/25, at 12. Appellant testified he contacted his mother, whom he indicated had been his "so-to-

speak liaison" and had "actually been the one paying" Attorney Ventrella. *Id.* Appellant testified he then sent a letter to Attorney Ventrella, dated January 10, 2025. *Id.*; *see also id.*, Appellant's Exhibit 4 (Letter, 1/10/25).

In the typewritten letter, Appellant stated he "defin[i]tely" wanted to file an appeal. Letter, 1/10/25. Appellant indicated that he could not afford Attorney Ventrella's requested fee until his tax refund came in the following month, and requested a payment plan. *Id.* Appellant further stated that if his suggested payment arrangement was unsatisfactory and Attorney Ventrella could not handle the appeal, Appellant asked Attorney Ventrella "to try to get me an extension so that I can get a court[-]appointed lawyer to file for me." *Id.*

Appellant testified that, after he sent the letter, he did not hear anything from Attorney Ventrella, but "just assumed [Attorney Ventrella] was doing what he had to do." N.T., 9/11/25, at 12-13. Appellant stated that, in March 2025, he requested a copy of his docket sheet from the clerk of courts and, upon receiving the document, learned that no appeal had been filed. *Id.* at 13.

Ms. Cox testified that Attorney Ventrella never received Appellant's January 10, 2025, letter. *Id.* at 22. Ms. Cox indicated that she opens all of Attorney Ventrella's mail, and that no such letter was ever received. *Id.* at 22-23.

Ms. Cox testified that, after Attorney Ventrella sent the January 2, 2025, letter to Appellant, Appellant's mother called Attorney Ventrella's office and asked to pick up Appellant's file. *Id.* at 19. Ms. Cox informed Attorney Ventrella of the request, and they arranged for Appellant's mother to pick up his file. *Id.* Ms. Cox testified that Appellant's mother picked up the file from Attorney Ventrella's office on January 31, 2025, and signed a document acknowledging her receipt of the file. *Id.* at 20; *see also* Commonwealth Exhibit 2 (Acknowledgement, 1/31/25). Ms. Cox testified Attorney Ventrella received no further communication from Appellant or his mother until April 2025, when Appellant's mother called to request assistance in mailing Appellant's file to Appellant. *Id.* at 21.[6] Appellant's mother returned the file to Attorney Ventrella's office and, on April 30, 2025, Ms. Cox mailed the file to Appellant. *Id.* at 21-23; *see also id.*, Commonwealth Exhibit 2 (April 30, 2025, letter from Attorney Ventrella to Appellant's mother, enclosing postal receipt).

Attorney Ventrella confirmed that, after he sent the January 2, 2025, letter to Appellant, Appellant's mother requested Appellant's file. *Id.* at 26-27; *see also id.* at 31 (Attorney Ventrella testifying Appellant's mother

---

[6] Attorney Ventrella testified that "apparently the [prison] wouldn't accept a large package from a [private] person[;] it had to be from a lawyer." N.T., 9/11/25, at 29. Ms. Cox testified that she spoke on the phone with both Appellant and his mother in connection with their April 2025 request for assistance in mailing the file. *Id.* at 22.

requested the file "at least a week before" she picked it up on January 31, 2025). Attorney Ventrella testified that Appellant's mother never indicated that Appellant wanted Attorney Ventrella to file an appeal. *Id.* at 27. Rather, Attorney Ventrella assumed Appellant had retained another attorney to handle the appeal. *Id.*

Attorney Ventrella testified that he never received any communication indicating Appellant wanted him to file an appeal. *Id.* Attorney Ventrella stated he had wanted to handle the appeal, and he would have "gladly worked with" Appellant on a payment plan, as Appellant "had always been good about paying." *Id.* at 28.

Attorney Ventrella confirmed he never received Appellant's January 10, 2025, letter. *Id.* He testified he could not account for the purported letter, but stated that "every other letter I'd received from [Appellant] was handwritten, so it's kinda suspicious to me that this one was typed." *Id.*

At the hearing's conclusion, the PCRA court announced its decision to dismiss Appellant's second PCRA petition. *Id.* at 35-39. The PCRA court found that Attorney Ventrella properly advised Appellant of his appellate rights via the January 2, 2025, letter. *Id.* at 37-38. **The court specifically discredited Appellant's testimony that he mailed the purported January 10, 2025, letter to Attorney Ventrella.** *Id.* at 38. Rather, the court found credible the testimony of Attorney Ventrella and Ms. Cox that neither Appellant nor his mother ever requested that Attorney Ventrella file

an appeal. *Id.*; *see also* Order, 9/11/25 (final order dismissing Appellant's second PCRA petition).

Appellant timely appealed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

> 1. Did the PCRA court err in denying relief where [Attorney Ventrella] failed to file a notice of appeal from the denial of Appellant's first PCRA petition?
>
> 2. Even accepting the PCRA court's credibility determination that no express request to appeal was made, did [Attorney Ventrella] render ineffective assistance by failing to constitutionally consult regarding appellate rights?
>
> 3. Where appellate rights are forfeited due to counsel's deficient performance, is reinstatement *nunc pro tunc* the proper remedy?

Appellant's Brief at 4.

We address Appellant's issues together. Relying on the United States Supreme Court's decision in ***Roe v. Flores-Ortega***, 528 U.S. 470 (2000), Appellant argues that an attorney's "duty to protect [a defendant's] appellate rights does not arise solely upon [a defendant's] explicit request" to file an appeal. Appellant's Brief at 9. Appellant maintains that an attorney "has a constitutional duty to consult regarding appellate rights when a rational defendant would want to appeal, or the defendant reasonably demonstrated [an] interest in appealing." *Id.* at 9-10 (citing ***Flores-Ortega***, 528 U.S. 470). Appellant asserts that "[c]onsultation requires more than advising a defendant of the existence of a deadline"; rather, "consultation means advising the defendant of the advantages and disadvantages of taking an appeal and

- 11 -

making a reasonable effort to ascertain the defendant's wishes." *Id.* at 10 (citing *Flores-Ortega*, *supra*). Appellant further asserts that "discussions with third parties do not satisfy [an attorney's] constitutional consultation requirement." *Id.* (citing *Commonwealth v. Touw*, 781 A.2d 1250 (Pa. Super. 2001)).

Appellant argues that, even accepting the PCRA court's credibility determinations and its finding that Appellant did not request an appeal, Attorney Ventrella did not fulfill his duty to consult with Appellant regarding his appellate rights. *Id.* at 9. Appellant maintains that Attorney Ventrella's action of "[s]ending a letter quoting a fee does not substitute for constitutionally adequate consultation." *Id.* at 11. Appellant contends Attorney Ventrella's testimony "that he surrendered the file to Appellant's mother underscores the breakdown in direct communication at a critical stage." *Id.* at 10-11. Appellant argues Attorney Ventrella's inaction resulted in the forfeiture of Appellant's appellate rights, and that the proper remedy is reinstatement of his appellate rights *nunc pro tunc*. *Id.* at 11.

The Commonwealth counters that Attorney Ventrella fulfilled his duty to consult with Appellant regarding his appellate rights. Commonwealth Brief at 7-8. The Commonwealth argues that Attorney Ventrella's January 2, 2025, letter "timely advised [Appellant] of the timeframe for [filing] an appeal, [] explained the advantages and disadvantages of an appeal, including the cost, and expressed urgency in needing an answer [from Appellant] about whether

to appeal." *Id.* (some punctuation modified). The Commonwealth maintains that Attorney Ventrella's letter constituted "a reasonable effort to ascertain [Appellant's] wishes." *Id.* at 8.

The Commonwealth emphasizes that Appellant described his mother as his "liaison," and that Appellant's mother contacted Attorney Ventrella before the expiration of the appeal period. *Id.* (citing N.T., 9/11/25, at 12-13). The Commonwealth argues the record establishes that Appellant's mother did not indicate that Appellant wanted Attorney Ventrella to file an appeal, but rather asked the attorney to turn over Appellant's file. *Id.* The Commonwealth maintains that these circumstances "would make a rational attorney" in Attorney Ventrella's place "believe that [Appellant] did not wish" him to file an appeal. *Id.*

> When reviewing an order dismissing a PCRA petition, we
>
> consider the record in the light most favorable to the prevailing party at the PCRA level. This review is limited to the evidence of record and the factual findings of the PCRA court. We afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. Accordingly, as long as the PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling.

*Commonwealth v. Pointer*, 348 A.3d 1216, 1227 (Pa. Super. 2025) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Baynard*, 355 A.3d 21, 25 (Pa. Super. 2026) (citation omitted); *see also*

*Commonwealth v. Green*, 168 A.3d 173, 177 (Pa. Super. 2017) (observing that whether an attorney's consultation with his client regarding an appeal "was adequate within the meaning of that term as expressed in *Flores-Ortega* … is a conclusion of law subject to review *de novo*").

In *Commonwealth v. Parrish*, 273 A.3d 989 (Pa. 2022), the Pennsylvania Supreme Court summarized *Flores-Ortega* as follows:

> In *Flores-Ortega*, the High Court first reviewed the law relating to ineffective assistance of counsel for the failure to file a requested appeal:
>
> > We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327 (1969); *cf. Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (accused has ultimate authority to make fundamental decision whether to take an appeal).
>
> *Flores-Ortega*, 528 U.S. at 470. As indicated, a showing that counsel failed to file a requested appeal is ineffectiveness *per se*, and prejudice is presumed without the need for proof because the circumstances are "so likely to prejudice the accused that the cost

- 14 -

of litigating their effect in a particular case is unjustified." ***United States v. Cronic***, 466 U.S. 648 (1984).

The Court in ***Flores-Ortega*** faced a circumstance in which the defendant had not instructed his counsel to file an appeal, but also, had not instructed his counsel not to file an appeal. The Court thus acknowledged that the case "lies between th[e] poles" of cases in which the defendant instructed counsel (one way or the other) with respect to the filing of an appeal, and thus the appropriate question is whether counsel is "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" ***Flores-Ortega***, 528 U.S. at 477.

The Court identified the requisite antecedent question, namely, "whether counsel in fact **consulted** with the defendant about an appeal." ***Id.*** at 478 (emphasis added).[7]

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is

---

[7] This Court has observed that "the secondary query of whether counsel consulted the defendant" does not involve ineffectiveness *per se*, but requires application of the traditional three-part test for ineffective assistance of counsel, under which a PCRA petitioner "must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Markowitz***, 32 A.3d 706, 716 (Pa. Super. 2011) (citations omitted). "Where counsel has not advised his client about the client's appellate rights, the question becomes whether that failure caused actual prejudice to the petitioner, *i.e.*, 'but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" ***Id.*** (quoting ***Flores-Ortega***, 528 U.S. at 484).

easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. … If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

*Id.*

As the Court explained, the term "consult" in this context requires a finding that counsel did or did not "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." *Id.* The Court explained that when counsel consults with the defendant, the question of deficient performance is easily answered. Knowing the defendant's wishes as to whether he wants an appeal to be filed, counsel performs in a professionally unreasonable manner if he fails to follow the defendant's express instructions. *Id.* On the other hand, "[i]f counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court rejected a bright-line rule requiring counsel to always consult with the defendant, holding instead that

[c]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. To make this determination, lower courts should consider "all the information counsel knew or should have known." *Id.*

**Parrish**, 273 A.3d at 1004-05 (some citations modified; footnote added).

- 16 -

Instantly, in its Rule 1925(a) opinion, the PCRA court explained that it

> found that [Attorney Ventrella] timely and properly advised [Appellant] of the denial of his PCRA petition, his right to appeal, and the 30-day appeal period, but that [Appellant] did not authorize, request, or direct [Attorney Ventrella] to file an appeal within the appeal period. On these issues, [the court] found the testimony of [Attorney Ventrella] and [Ms. Cox] to be credible and supported by the evidence, and the contrary testimony and evidence presented by [Appellant] to be not credible.

PCRA Court Opinion, 12/10/25, at 2. After reviewing the relevant legal principles, the PCRA court concluded that "[s]ince [Appellant] was properly and timely advised of his right to appeal, but did not ask [Attorney Ventrella] to file an appeal, [Attorney Ventrella] was not ineffective." *Id.* at 3.

We agree with the PCRA court that Appellant failed to establish that Attorney Ventrella rendered ineffective assistance. Our review confirms the record supports the PCRA court's finding that Attorney Ventrella consulted with Appellant regarding an appeal. Via his January 2, 2025, letter, Attorney Ventrella advised Appellant of the appeal period, discussed the advantages and disadvantages of an appeal, and requested a response from Appellant. *See* Letter, 1/2/25.[8] Viewed in the light most favorable to the

---

[8] Appellant's reliance on *Touw* is unavailing. In *Touw*, the defendant's counsel discussed with the defendant's "parents the advantages and disadvantages of taking an appeal." *Touw*, 781 A.2d at 1255. This Court observed that "[s]uch a discussion with [the defendant] would have constituted consultation for the purposes of *Flores-Ortega*," but that the PCRA court had made no finding as to whether counsel had such a discussion with the defendant himself. *Id.* In the instant case, Attorney Ventrella communicated directly with Appellant via the January 2, 2025, letter.

Commonwealth, the record indicates that Appellant responded to Attorney Ventrella's consultation by requesting, via his mother, that the attorney surrender his file.[9]   Under these circumstances, we determine that Attorney Ventrella made a reasonable effort to discover Appellant's wishes, and acted in accordance with those wishes by surrendering the file to Appellant's mother. Therefore, Attorney Ventrella did not render ineffective assistance, and Appellant's issues merit no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/3/2026

_____

[9] Appellant testified that he contacted his mother following his receipt of Attorney Ventrella's January 2, 2025, letter, but did not indicate what he and his mother discussed.  N.T., 9/11/25, at 12.  Nevertheless, Appellant never contradicted the testimony of Attorney Ventrella and Ms. Cox regarding his mother's actions, nor did he suggest that his mother acted without his authority or contrary to his wishes.  *See id.* at 7-16; *see also id.* at 12 (Appellant describing his mother as his "liaison" with Attorney Ventrella).  We reiterate that the PCRA court credited the testimony of Attorney Ventrella and Ms. Cox, and discredited Appellant's contrary testimony.  *Id.* at 38; *see also* PCRA Court Opinion, 12/10/25, at 2.

- 18 -